RECEIVED

AUG 12 2015

AT 8:30 ______________ M
WILLIAM T. WALSH, CLERK

2009R01422/ADL/JNM/DAW

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 15- 399-SRC |
| | : | |
| v. | : | |
| | : | 18 U.S.C. §§ 371, 1952(a)(1)&(3), 2 |
| BRET OSTRAGER | : | 42 U.S.C. § 1320a-7b(b)(1)(A) |

**I N D I C T M E N T**

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNT ONE**
(Conspiracy to Violate the Federal Anti-kickback Statute and Travel Act)

1. Unless otherwise indicated, at all times relevant to this Indictment:

a. Biodiagnostic Laboratory Services, LLC ("BLS") was a clinical blood laboratory headquartered in Parsippany, New Jersey that, among other things, performed tests on the blood specimens of patients referred to BLS by medical doctors ("Physicians"), and then billed others for those tests and related services.

b. The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was a "Federal health care program" as defined in Title 42,

United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "Beneficiaries."

    c. The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled. The Medicare Part B program paid for various medical services for Beneficiaries, including blood tests and related services.

    d. BLS was an approved Medicare provider, and Medicare paid BLS for performing blood tests and related services performed for Beneficiaries who had been referred to BLS by Physicians participating in Medicare.

    e. BLS billed, and was paid by, various private health care insurance companies (collectively, the "Private Insurers") in the business of providing health care insurance to individuals and entities under various insurance policies (the "Insureds"), pursuant to which the Private Insurers paid BLS for blood tests and related services performed for Insureds who had been referred to BLS by Physicians.

    f. BLS paid sales representatives a commission based on the amount of revenue received by BLS from Medicare and the

Private Insurers for the performance of blood tests and related services performed on blood specimens referred to BLS by Physicians the sales representatives recruited or serviced.

    g. David Nicoll, who is a co-conspirator not charged herein, was an owner and the President of BLS and generally exercised control over the operations of BLS.

    h. Scott Nicoll, who is a co-conspirator not charged herein, was employed by and acted on behalf of BLS. In addition, beginning in or about 2010, Scott Nicoll caused the formation of an entity called Nicoll Brothers Consulting, LLC.

    i. Luke Chicco, who is a co-conspirator not charged herein, acted on behalf of BLS. In addition, beginning in or about January 2011, Luke Chicco caused the formation of an entity called PJC Consulting, Inc.

    j. Doug Hurley, who is a co-conspirator not charged herein, was employed by and acted on behalf of BLS as a sales representative. In addition, beginning in or about 2011, Doug Hurley caused the formation of an entity called Shanti Consulting, LLC.

The BLS Bribery Scheme

2. Beginning prior to February 2011 and continuing through in or about April 2013, BLS routinely paid Physicians bribes to induce them to refer the blood specimens of their Medicare and Private Insurer patients to BLS for testing.

3. During the BLS bribery scheme, BLS bribed Physicians practicing medicine in New Jersey and in New York. To generate funds to pay bribes in a given month, BLS relied upon and used the monies generated by patient blood specimen referrals from Physicians, wherever located, that had been obtained in prior months.

Defendant BRET OSTRAGER

4. At all times relevant to this Indictment, the defendant, BRET OSTRAGER, was a licensed medical doctor who practiced medicine from one or more locations in Nassau County, New York. As a physician, defendant BRET OSTRAGER owed a fiduciary duty to his patients.

5. From at least as early as in or about February 2011, defendant BRET OSTRAGER agreed with one or more persons employed by and/or acting on behalf of BLS to refer the blood specimens of his Medicare and Private Insurer patients to BLS for testing in exchange for monthly bribe payments.

6. From at least as early as in or about February 2011 through April 2013, defendant BRET OSTRAGER accepted monthly bribes

in the form of cash and other items of value in exchange for referring the blood specimens of his Medicare and Private Insurer patients to BLS. Many of the bribes accepted by defendant BRET OSTRAGER were paid by BLS with funds obtained from its bank account located in New Jersey. Defendant BRET OSTRAGER did not advise his patients that he was receiving bribes in exchange for referring their blood specimens to BLS.

7.  The referrals from defendant BRET OSTRAGER enabled BLS to collect approximately $909,000 from Medicare and the Private Insurers.

8.  From at least as early as in or about February 2011 through in or about April 2013, in the District of New Jersey, and elsewhere, defendant

BRET OSTRAGER

did knowingly and intentionally conspire and agree with, Scott Nicoll, Luke Chicco, Doug Hurley, and others to commit offenses against the United States, that is:

   a.  to solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS through one or more co-conspirators, in order to induce defendant BRET OSTRAGER to refer patients and cause the referral of patients to BLS for the furnishing and arranging for the furnishing of items and services, that is, the referral of patient

blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

b. to knowingly and intentionally travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery, contrary to N.J.S.A. § 2C:21-10 and Title 18, United States Code, Section 1952(a)(1)and (a)(3) and, thereafter, to perform and attempt to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity.

Object of the Conspiracy

9. The object of the conspiracy was to illegally generate large sums of money for defendant BRET OSTRAGER, co-conspirators Scott Nicoll, Luke Chicco, Doug Hurley, and others by exchanging illegal bribes for referrals of patient blood specimens which generated BLS revenue.

Manner and Means of the Conspiracy

10. The manner and means by which defendant BRET OSTRAGER, Scott Nicoll, Luke Chicco, Doug Hurley, and others sought to accomplish the object of the conspiracy included, among other things, the following:

a. It was a part of the conspiracy that one or more co-conspirators offered, and defendant BRET OSTRAGER accepted, in person and by mail, cash bribes of approximately $3,300 per month to induce the referral of patient blood specimens to BLS (the "Monthly Bribes").

b. It was a further part of the conspiracy that, in addition to the Monthly Bribes, defendant BRET OSTRAGER periodically solicited, and one or more co-conspirators agreed to pay, defendant BRET OSTRAGER additional bribes to increase the volume of his patient blood specimen referrals to BLS, as well as to increase defendant BRET OSTRAGER's ordering of specific tests referred. These additional bribes included tickets and meals that cost - in the aggregate - thousands of dollars, and were periodically given to defendant BRET OSTRAGER at no charge and in response to specific requests by him for tickets, including to a New York Mets baseball game, a New York Knicks basketball game, a Katy Perry concert, a Justin Bieber concert, and the Broadway show "Newsies."

    c. It was a further part of the conspiracy that defendant BRET OSTRAGER maintained periodic contact with one or more co-conspirators through interstate communications, including electronic communications.

d. It was a further part of the conspiracy that various of the co-conspirators made efforts to track, by month: (i) the monies paid as bribes to defendant BRET OSTRAGER; (ii) the blood tests defendant BRET OSTRAGER caused to be ordered and referred to BLS; and (iii) the revenue those blood tests generated for BLS.

Overt Acts

11. In furtherance of the conspiracy and in order to effect the objects thereof, defendant BRET OSTRAGER and his co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a. On or about April 1, 2011, Luke Chicco physically delivered a Monthly Bribe to defendant BRET OSTRAGER.

b. On or about March 6, 2012, Doug Hurley travelled from New Jersey to New York to meet with defendant BRET OSTRAGER in connection with the bribery scheme.

c. On or about April 11, 2012, defendant BRET OSTRAGER sent a text message to Luke Chicco.

				d. In or about April 2012, defendant BRET OSTRAGER accepted, as a bribe, tickets to the April 26, 2012, New York Mets baseball game.

e. On or about April 27, 2012, defendant BRET OSTRAGER caused a patient blood test to be ordered and the resulting blood specimen to be referred to BLS, where it was received at BLS's facilities in Parsippany, New Jersey.

f. On or about May 31, 2012, defendant BRET OSTRAGER sent a text message to Doug Hurley.

g. On or about November 21, 2012, defendant BRET OSTRAGER caused a patient blood test to be ordered and the resulting blood specimen to be referred to BLS, where it was received at BLS's facilities in Parsippany, New Jersey.

h. By no later than on or about November 28, 2012, defendant BRET OSTRAGER accepted, as a bribe, 5 tickets to the November 28, 2012, performance of Justin Bieber at Madison Square Garden that were purchased at a cost of $1,875 by Scott Nicoll for defendant BRET OSTRAGER, using BLS funds paid by BLS from its bank account located in New Jersey.

i. On or about December 6, 2012, Luke Chicco caused a Monthly Bribe to be sent via Federal Express to defendant BRET OSTRAGER.

j.      On or about December 7, 2012, defendant BRET OSTRAGER received and accepted a Monthly Bribe that had been sent to him by Luke Chicco via Federal Express.

k.      On or about January 3, 2013, defendant BRET OSTRAGER caused a patient blood test to be ordered and the resulting blood specimen to be referred to BLS, where it was received at BLS's facilities in Parsippany, New Jersey.

l.      On or about March 10, 2013, Luke Chicco caused a Monthly Bribe to be delivered by Federal Express to defendant BRET OSTRAGER.

m.      On or about March 11, 2013, defendant BRET OSTRAGER received and accepted a Monthly Bribe that had been sent to him by Luke Chicco via Federal Express.

n.      On or about March 15, 2013, defendant BRET OSTRAGER caused a patient blood test to be ordered and the resulting blood specimen to be referred to BLS, where it was received at BLS's facilities in Parsippany, New Jersey.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO THROUGH FOUR**
(Illegal Remuneration in Violation of the Federal Anti-Kickback Statute)

1. Paragraphs 1 through 7 and 9 through 11 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2. On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendant

BRET OSTRAGER

did knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS, in order to induce defendant BRET OSTRAGER to refer patients and cause the referral of patients to BLS for the furnishing and arranging for the furnishing of items and services, that is, the referral of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, as follows:

| **Count** | **Date of Kickback/Bribe** |
|---|---|
| TWO | April 1, 2011 |
| THREE | December 6, 2012 |
| FOUR | March 10, 2013 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), and Title 18, United States Code, Section 2.

**COUNTS FIVE THROUGH EIGHT**
(Use of the Mail and Facilities in Interstate Commerce
and Interstate Travel to Promote, Carry On
and Facilitate Commercial Bribery)

1.   Paragraphs 1 through 7 and 9 through 11 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2.   On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendant

BRET OSTRAGER

did knowingly travel in and use the mail and facilities in interstate commerce and cause the travel in and use of the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery contrary to N.J.S.A. § 2C:21-10, and, thereafter, did perform and attempt to perform an act to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity as follows:

| Count | Date | Travel or Use of Mail or Facility in Interstate Commerce | Acts Performed Thereafter |
|---|---|---|---|
| FIVE | April 11, 2012 | Text Message, as set forth in Paragraph 11(c) of Count One | The Acts Set Forth in Paragraphs 11(d) and 11(e) of Count One |
| SIX | May 31, 2012 | Text message, as set forth in Paragraph 11(f) of Count One | The Acts Set Forth in Paragraphs 11(g) and 11(h) of Count One |
| SEVEN | December 6, 2012 | Mailing, as set forth in Paragraph 11(i) of Count One | The Acts Set Forth in Paragraphs 11(j) and 11(k) of Count One |
| EIGHT | March 10, 2013 | Mailing, as set forth in Paragraph 11(l) of Count One | The Acts Set Forth in Paragraphs 11(m) and 11(n) of Count One |

All in violation of Title 18, United States Code, Section 1952(a)(1) and (3), and Title 18, United States Code, Section 2.

**FORFEITURE ALLEGATION AS TO COUNT ONE**

1. As a result of committing the conspiracy offense in violation of 18 U.S.C. § 371 as alleged in Count One of this Indictment, defendant BRET OSTRAGER shall forfeit to the United States:

(a) Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in Count One of this Indictment; and

(b) Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1952(a)(1) and (3) as alleged in Count One of this Indictment;

And all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNTS TWO THROUGH FOUR**

2. As a result of committing the offenses in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) as alleged in Counts Two, Three and Four of this Indictment, defendant BRET OSTRAGER shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) as alleged in such Counts, and all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNTS FIVE THROUGH EIGHT**

3. As a result of committing the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3), as alleged in Counts Five, Six, Seven, and Eight of this Indictment, defendant BRET OSTRAGER shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3) as alleged in such Counts, and all property traceable to such property.

**SUBSTITUTE ASSETS PROVISION**
**APPLICABLE TO ALL FORFEITURE ALLEGATIONS**

4. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c)), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL

FOREPERSON

PAUL J. FISHMAN
UNITED STATES ATTORNEY

**CASE NUMBER:** 15-cr-399-SRC

## United States District Court
## District of New Jersey

**UNITED STATES OF AMERICA**

**v.**

**BRET OSTRAGER**

# INDICTMENT FOR

18 U.S.C. §§ 371, 1952(a)(1)&(3), 2

**PAUL J. FISHMAN**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

JOSEPH N. MINISH & DANIELLE ALFONZO WALSMAN
*ASSISTANT U.S. ATTORNEYS*
*(973)645-2700*

**USA-48AD 8**
**(Ed. 1/97)**