UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Crim. No. 15-399 (SRC) |
| v. : | |
| : | Opposition of the United States |
| BRET OSTRAGER, : | to Defendant's Motion To Dismiss |
| Defendant. : | |

Ostrager argues that this Court should dismiss the Travel Act object from Count One, and also Counts Five through Eight in their entirety for three related reasons. First, he asserts, the New Jersey commercial bribery statute, N.J.S.A. 2C:21-10, is not a valid Travel Act predicate offense under the facts of this case. Second, he asserts that because his medical practice is in New York, he did not have "fair notice" that his professional medical conduct would be judged by the legal standards imposed by New Jersey. Third, he argues that the phrase "duty of fidelity" is unconstitutionally vague. Additionally, Ostrager argues that the entire indictment should be dismissed because the Government has neither proven nor even alleged that he did anything in return for the alleged bribe payments or that he breached his duty of fidelity. These arguments all are without merit, and Ostrager's motions should be denied.

1

## I. THERE IS NO BASIS TO DISMISS THE TRAVEL ACT ALLEGATIONS.

The heart of Ostrager's argument seeking dismissal of the Travel Act allegations is his contention that because he is licensed to practice medicine in New York, he should not be held accountable to any duty of fidelity that arises under New Jersey law. He implies that the New Jersey commercial bribery statute is some sort of outlier, and that his conduct was perfectly acceptable in New York, where he is licensed to practice. As will be demonstrated below, these assertions cannot withstand serious scrutiny. Whether judged by New Jersey standards, New York standards, or national standards, it is clear that Ostrager's acceptance of kickbacks for patient referrals violated his duty of fidelity to his patients. His illegal conduct had important, demonstrable effects in New Jersey, and he may properly be held accountable under the Travel Act for his underlying violation of New Jersey's commercial bribery statute.

### A. Ostrager's "Duty Of Fidelity" Can Be Determined Under New Jersey Law, And The Alleged Conduct Would Violate His Duty Of Fidelity In Either New York Or New Jersey.

Ostrager contends that his medical conduct and the duty he owes to his patients is regulated by the State of New York. He posits that the conduct in which he engaged is not a violation of the duty he owes to his patients under New York law. He is mistaken. Ostrager's alleged conduct violates not only New Jersey law,

but also New York law, as well as the standards of the American Medical Association, which standards apply to all medical practitioners.[1]

New York Public Health Law, 10 CRR-NY 34-1 governs "health care practitioner referrals," and provides, in relevant part, that "a practitioner authorized to order clinical laboratory services . . . *may not make a referral* for such services to a health care provider authorized to provide such services where such practitioner or immediate family member of such practitioner *has a financial relationship* with such health care provider." 10 CRR-NY 34-1.3 (emphasis added). The indictment alleges that Ostrager had a financial relationship with Biodiagnostic Laboratory Services, LLC ("BLS"). In particular, the indictment alleges that Ostrager received monthly payments from BLS of approximately $3,300, as well as additional bribes in tickets and meals, in exchange for referring the blood specimens of his patients to BLS. Indictment at ¶ 10. Ostrager clearly and unambiguously violated New York Public Health Law by having a financial interest in the referrals that he made to BLS. Thus, it is clear that, even if judged

---

[1] Under New Jersey's commercial bribery statute, it is a crime to "…accept[] or agree[] to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which [Ostrager] is subject as … (3) A … physician …" Ostrager's conduct is thus in violation of the statute regardless of whether the duty derived from his state, the state to which he sent his patient's blood, the AMA's national standards, or otherwise. Ostrager does not contest the fact that his conduct violated the duty of fidelity under New Jersey standards.

3

under New York legal standards, as Ostrager suggests should be done, he violated his duty of fidelity to his patients by accepting kickbacks for referrals.

Ostrager also argues that New York's commercial bribery statute is more narrow than New Jersey's, and that he was not in violation of New York's commercial bribery statute. Even if true, that would not be particularly relevant since, as shown above, the kickbacks alleged in the indictment violate New York's Public Health Law. And it is not true that the kickback allegation is lawful conduct under New York's commercial bribery statute. Ostrager provides no case law support for his narrow interpretation of the New York statute, which appears on its face to prohibit the conduct alleged in the indictment. New York Penal Law Section 180.00 provides:

> A person is guilty of commercial bribing in the second degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or *fiduciary* without the consent of the latter's employer or *principal*, with intent to influence his conduct in relation to his employer's or principal's affairs. Commercial bribing in the second degree is a class A misdemeanor. [emphasis added].

Ostrager suggests that this statute is focused primarily on an employee being corrupted to act against his or her employer. While that may well be the most common factual scenario in which the statute is applied, by its express terms the statute applies to any fiduciary/principal relationship. In this situation, Ostrager is the fiduciary and his patients are the principals. *See Aufrichtig v. Lowell*, 85 N.Y.2d 540, 546 (1995) (physician-patient relationship is "a special relationship

4

akin to a fiduciary bond;" the relationship "is infused with fiduciary obligations"). Because Ostrager received a benefit (*i.e.*, a cash kickback) without the consent of his patients, he violated the plain language of the New York commercial bribery statute.

Ostrager argues to the contrary by quoting from the *background material* to the model jury charge governing first degree commercial bribery, which suggests that "[a]n essential element of the crime is that it be done without the knowledge or consent of the employer." Memorandum at 8, *quoting* 1 Charges to Jury & Requests to Charge in a Criminal Case in New York § 1535 (WestlawNext). By quoting this language, Ostrager suggests that New York's commercial bribery statute is limited to employer situations. But it is clear that the quote Ostrager cites resulted from sloppy language in the background material, as the *actual model jury charge* tracks the statute accurately and states that "at the time the benefit was offered, agreed upon or conferred, the person who was to receive that benefit did not have the consent of [his/her] employer *or principal* to receive that benefit." *Id.* at § 1536 (emphasis added); *see also id.* at 1539 (similar references to "employer or principal" throughout model jury charge for second degree commercial bribery).

Moreover, Ostrager's conduct in accepting a bribe or kickback for his referrals was in violation of the American Medical Association's Code of Medical Ethics, which apply equally to physicians practicing in New York, New Jersey, and

5

throughout the United States. Physicians have "ethical obligations to place patients' welfare above their own self-interest." AMA Opinion 10.015. In particular, the Code of Medical Ethics includes a prohibition on "fee splitting" and states in relevant part that, "[p]ayment by or to a physician solely for the referral of a patient is fee splitting and is unethical. A physician may not accept payment of any kind, in any form, *from any source* . . . for prescribing or referring a patient to said source." AMA Opinion 6.02 (emphasis added). The Code of Medical Ethics similarly states that, "[c]linics, *laboratories*, hospitals, or other health care facilities that compensate physicians for referral of patients are engaged in fee splitting which is unethical." AMA Opinion 6.03 (emphasis added). Physicians have an ethical obligation to "always make referral decisions based on the best interests of their patients." AMA Opinion 8.132.

Ostrager also suggests that a violation of the New Jersey bribery statute cannot form a basis for the Travel Act charge because New Jersey is not where the crime occurred. Memorandum at 10-11. He points to the fact that his medical practice and patients were in New York. Ostrager neglects to mention, however, the crucial facts that occurred in New Jersey. First, Ostrager received a bribe from a New Jersey company. Indictment at ¶¶ 1(a), 6. Second, he was paid bribes from a New Jersey bank. *Id.* at ¶ 11(h). Third, in exchange for the bribe payments, Ostrager referred the medical work to a New Jersey company. *Id.* at ¶ 10(a).

6

Fourth, the laboratory work that was part of the scheme was performed in New Jersey. *Id.* at ¶ 11(e). This is more than enough to bring the actions within the ambit of the New Jersey commercial bribery statute.

In *United States v. Lee*, 359 F.3d 194 (3d Cir. 2004), the Third Circuit considered "whether the conduct at issue was sufficiently tied to the State of New Jersey to permit that state to regulate that conduct without violating the federal Constitution." 359 F.3d at 205 n.5. Lee was charged with, among other things, a Travel Act violation that relied upon an underlying violation of the New Jersey commercial bribery statute. Lee challenged his conviction, arguing in language that mirrors Ostrager's, that "the vast majority of the conduct constituting 'commercial bribery' took place outside the state of New Jersey in states that either do not consider such conduct a crime, or do not consider it as serious a criminal offense as New Jersey does." 359 F.3d at 206. The Third Circuit rejected that argument, noting that, "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the defendant] had been present [in the state] at the effect." 359 F.3d at 206 (*quoting Strassheim v. Daily,* 221 U.S. 280, 284 (1911)). The Court found that, "[t]he conduct in question had effects within New Jersey: it tended to harm a business headquartered in the state and to produce attendant consequences

7

there. These effects are sufficient to permit the state to regulate the conduct without violating due process." 359 F.3d at 206.

Applying those principles here, it is clear that Ostrager may be charged with a violation of the New Jersey commercial bribery statute. New Jersey has a strong interest in seeing that its competitive marketplace is not corrupted by bribes and kickbacks. It has an interest in seeing that its own corporations are not bribing physicians, and that its banks are not used as conduits for such bribes. And legitimate medical laboratory businesses in New Jersey that were unwilling to pay commercial bribes were placed at a competitive disadvantage in obtaining Ostrager's medical referrals. The maintenance of a fair and competitive economic marketplace is among the important harms that commercial bribery statutes are intended to protect against. A scheme involving bribe payments from a New Jersey company, with funds originating in New Jersey, for work that is ultimately performed in New Jersey, can be prosecuted under New Jersey's commercial bribery statute, and it therefore can be used as a predicate offense under the Travel Act.

### B. Ostrager Has "Fair Notice" That He May Be Charged With A Violation Of New Jersey's Commercial Bribery Law.

Ostrager similarly argues that he lacked "fair notice" that his "duty of fidelity" would be determined by New Jersey commercial bribery law. He argues that "the law of commercial bribery varies markedly from state to state, and

8

because the New York commercial bribery statute does not criminalize the conduct at issue here, Doctor Ostrager lacks fair notice that the New Jersey Commercial Bribery statute would apply to his conduct and make it illegal." Memorandum at 12.

As demonstrated above, the two premises of Ostrager's argument are mistaken. First, New York does in fact prohibit the conduct at issue here, and Ostrager has violated his duty of fidelity to his patients as construed not only under New Jersey's standards, but also under New York's standards and the standards of the entire national medical community. Second, Ostrager's conduct – which involved taking bribe payments from a New Jersey company, with funds originating in New Jersey, for work that he himself directed should be performed in New Jersey, and that was indeed performed in New Jersey, can be prosecuted under New Jersey's commercial bribery statute. Indeed, the notion that an individual would be shocked to learn that New Jersey law could be applied in a situation where *he chose* to do business with a New Jersey company, and where *he directed* that work be performed in New Jersey as a reward for the bribes and kickbacks that *he received* from the New Jersey company, rings hollow.

9

## C. The Phrase "Duty Of Fidelity" Is Not Unconstitutionally Vague As Applied To Ostrager's Conduct.

Ostrager argues that the phrase "duty of fidelity" in the New Jersey commercial bribery statute is vague as applied to him as a physician.[2] Ostrager is wrong. The New Jersey statute explicitly applies to the physician-patient relationship, and a physician who agrees to accepts kickbacks for steering his patients to particular providers of medical services has "fair warning" that his conduct puts him "at risk of punishment" for violating his duty of fidelity to his patients.

"A statute is void on vagueness grounds if it: (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorizes or even encourages arbitrary and discriminatory enforcement. The inquiry is undertaken on a case-by-case basis, and a reviewing court must determine whether the statute is vague as-applied to the affected party." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (internal citations and quotation marks omitted).

> In the criminal context, the Supreme Court has held that since vagueness attacks are based on lack of notice, they may be overcome in any specific case where reasonable persons would know their conduct puts them at risk of punishment under the statute. Therefore, for a criminal statute to be constitutional, criminal statutes need only give "fair warning" that certain conduct is prohibited. Simply because

---

[2] Ostrager has not raised a facial vagueness challenge to the constitutional validity of the New Jersey statute.

10

> a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague. In addition, the Supreme Court has held that scienter requirements in criminal statutes alleviate vagueness concerns, because a mens rea element makes it less likely that a defendant will be convicted for an action that he or she committed by mistake.

*Fullmer*, 584 F.3d at 152 (internal citations and quotation marks omitted); *accord United States v. Moyer*, 674 F.3d 192, 211-12 (3d Cir. 2012) ("Scienter requirements in criminal statutes 'alleviate vagueness concerns' because a *mens rea* element makes it less likely that a defendant will be convicted for an action committed by mistake.").

In *United States v. Gaudreau*, 860 F.2d 357 (10th Cir. 1988), the Tenth Circuit considered whether Colorado's commercial bribery statute was void for vagueness and therefore could not serve as a predicate offense for a RICO prosecution. The Colorado commercial bribery statute, like the New Jersey statute, prohibits a "knowing violation of a duty of fidelity." 860 F.2d at 358. The Government alleged that the Gaudreaus (a father and son) agreed to give money to a high-level executive at the Public Service Company of Colorado, in exchange for his approving contracts for goods and services. The Tenth Circuit upheld the use of the Colorado commercial bribery statute against the Gaudreaus' void for vagueness challenge.

The Tenth Circuit noted that "the authorities are unanimous that an officer or agent breaches his duty of loyalty to his corporation or principal by accepting

11

bribes to compromise his principal's interests." 860 F.2d at 362. Additionally, the Court noted that the law's scienter requirement provided protection against any potential vagueness in the law:

> The Colorado statute prohibits enumerated classes of people from "knowingly violating or agreeing to violate a duty of fidelity...." The type of scienter which the prosecution must prove is precisely the type that overcomes the objection that the Colorado statute may punish without fair warning to the accused; the prosecution must prove beyond a reasonable doubt that he knew his duty of fidelity and knew he was violating it.

*Gaudreau*, 860 F.2d at 363; *see also Moyer*, 674 F.3d at 212 ("Because a defendant will be convicted for violating § 1519 'only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.'") (*quoting Screws v. United States,* 325 U.S. 91, 102 (1945)).

  The New Jersey bribery statute requires the Government to prove beyond a reasonable doubt that Ostrager accepted or agreed to accept money as consideration for "knowingly violating or agreeing to violate a duty of fidelity to which he is subject as . . . [a] physician." Because the Government is required to prove that Ostrager knowingly violated his duty of fidelity to his patients, and that he accepted money for doing so, Ostrager can hardly claim that he lacked "fair warning" that his "conduct [put him] at risk of punishment under the statute." *Fullmer*, 584 F.3d at 152.

12

The allegations in the indictment, if proven at trial, easily would establish that Ostrager violated his duty of fidelity as a physician to his patients. Ostrager readily concedes that his conduct can be judged by the medical standards of conduct applicable to physicians in New York State, and as already demonstrated, his alleged conduct in accepting payment in exchange for referrals was a clear violation of New York State Public Health Law, 10 CRR-NY 34-1. And Ostrager has never contended that his duty of fidelity under New Jersey law (which Ostrager seems to concede he violated) is less than his duty of fidelity under New York law. Likewise, the Government has amply demonstrated that the conduct alleged in the indictment was a clear violation of the American Medical Association's standards of conduct for all physicians. Indeed, Ostrager's ready agreement to accept and seek plainly illegal kickbacks for referrals for his Medicare patients is powerful evidence that he violated his duty of care for all of his patients – whether private pay or Government pay.[3] Ostrager's notion that only the class of patients for whom the Government provides payment should be protected from a physician's undisclosed conflict of interest is a difficult distinction to make or justify. *See United States v. Nayak*, 769 F.3d 978, 982 (7th Cir. 2014) (physician

---

[3] Ostrager does not appear to contest, nor could he, that a doctor who accepts a kickback from a lab as an inducement to refer a Medicare patient to a specific lab for testing has violated the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(1)(A). The thrust of his argument is that he lacked "fair notice" that the same conduct is also illegal when a private insurance company is paying for the services.

13

kickback scheme charged as an honest services mail fraud violation; rejecting a "distinction between public and private fraud"); *see also id.* at 984 (noting the important fiduciary interests at play in the doctor-patient relationship).

Ostrager nevertheless poses a series of questions in his memorandum which suggest to him that the scope of his "duty of fidelity" to his patients is unclear and undefined. He asks, for example, whether he has a duty to inform his patients whether he has a preferred laboratory or a relationship with a certain laboratory. Memorandum at 15. But this Court need not decide what the outermost limits are of Ostrager's duty of fidelity to his patients. Rather, it must determine whether accepting kickbacks for patient referrals, which is what is alleged here, falls within his duty of fidelity. *See Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) ("[E]ven if the outermost boundaries of [a statute are] imprecise, any such uncertainty has little relevance . . . where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions.").

The evidence at trial will show that Ostrager did not just have "a relationship" with BLS, rather he knowingly entered into a criminal relationship with BLS. There is no dispute that if the Government can successfully demonstrate, as alleged, that BLS paid Ostrager referral fees for his Medicare patients, those payments were illegal. And the evidence at trial will show that Ostrager did not make any referrals to BLS until BLS offered to pay him

14

kickbacks. As a result, it can hardly be argued (as Ostrager's motion implies) that Ostrager directed that his patients' blood work be sent to BLS's laboratory because he knew from experience that they performed high quality work.

A reasonable patient would want to know that Ostrager was directing his or her blood work be performed by a laboratory into which Ostrager had knowingly entered into a relationship only after having been offered an illegal bribe. A reasonable patient would be concerned that a laboratory willing to pay for referrals and engage in criminal conduct might not be the best one to entrust with performing his or her medical testing honestly and accurately. A reasonable patient would want to know that the number and kind of blood tests that Ostrager was ordering for him or her would play a role in how large a kickback Ostrager would receive, since that could easily result in unnecessary testing, with all its accompanying risks. And a reasonable patient would want to know the extent to which Ostrager had exposed him or her to possible financial risk for out-of-network charges that need not have been incurred. Indeed, a reasonable patient would want to know that Ostrager's selection of BLS was in violation of New York Public Health law and the standards of the American Medical Association.[4]

---

[4] Also, Ostrager ignores the allegation in the Indictment that he solicited, and BLS agreed to pay, additional bribes to induce him to order additional tests for his patients. Indictment at ¶ 10(b). Although that factual allegation is not necessary to resolve this case, it further demonstrates Ostrager's violation of his duty of fidelity to his patients. *See* AMA Opinion 8.03 ("Under no circumstances

The Government suggests that, for most law-abiding medical providers, the decision on where to send a patient's blood work for laboratory testing typically turns on the physician's prior experience with that provider, *see* AMA Opinion 6.02 (referrals should be based on the skill and quality of the services), and whether the provider is within the patient's provider network, *see* AMA Opinion 8.132 (referral decisions must be based on the best interests of the patient, and patient must be informed if patient's health plan does not cover desired referral), not on whether the laboratory is willing to give the physician tickets to a Justin Bieber or Katy Perry concert, *see* Indictment at ¶ 10(b). This is not a case in which Ostrager can credibly claim that he engaged in conduct he reasonably thought was acceptable or proper. Medical professionals who believe their practices are in compliance with the law do not typically accept, as Ostrager did, envelopes filled with cash in connection with their medical practices. Applying the New Jersey commercial bribery statute to Ostrager's conduct here does not amount to a trap for a law-abiding, but unwary physician.

## II. THE INDICTMENT SHOULD NOT BE DISMISSED FOR AN ALLEGED FAILURE TO SPECIFY A "QUID PRO QUO."

In a short and conclusory two paragraph argument, Ostrager asserts that the entire indictment should be dismissed because "the government has not specified

---

may physicians place their own financial interests above the welfare of their patients.... For a physician to unnecessarily . . . conduct diagnostic tests for the physician's financial benefit is unethical.").

16

the 'quid pro quo' regarding either the 'kickback' or the New Jersey commercial bribery statute." Memorandum at 18. The argument is difficult to understand. The indictment clearly alleges that Ostrager received something of value, cash kickbacks, in exchange for giving something of value to BLS, patient referrals. Indictment at ¶¶ 10-11.

Ostrager suggests that the evidence at trial will show that he used different laboratories on different occasions. Memorandum at 18. That may well be true, but it is beside the point. The Government is not required to prove that each and every referral Ostrager ever made was illegal. To the extent he did not receive kickbacks for particular referrals, those referrals would not be illegal. And it is well settled that a motion to dismiss the indictment is not the proper place for a defendant to make predictions about what the evidence at trial will show. *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011). This Court should deny Ostrager's motion to dismiss the indictment for an alleged failure to specify a "quid pro quo."

## **CONCLUSION**

For the reasons set forth, defendant's motions to dismiss the indictment should be denied.

Respectfully submitted,

Paul J. Fishman
United States Attorney

s/ Joseph N. Minish

By:  Glenn J. Moramarco
Joseph N. Minish
Danielle A. Walsman
Assistant United States Attorneys